**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **HEATHER HARICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-17-2301** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

<u>**MEMORANDUM OPINION**</u>

Heather Harich ("Plaintiff") brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 10) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 11). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **REVERSES** and **REMANDS** the matter for further clarification.

**I.      Procedural Background**

On September 5, 2013, Plaintiff filed for DIB under Title II, alleging disability beginning December 29, 2009. R. 13. Plaintiff alleged disability due to multiple sclerosis ("MS"), gastroesophageal reflux disease ("GERD"), depressive disorder, anxiety disorder, and migraines.

R. 15.  An administrative hearing was held on June 30, 2016, and on July 15, 2016, the claim

was denied.  R. 13, 25.  Plaintiff sought review by the Appeals Council, which concluded on

June 12, 2017, that there was no basis for overturning the decision of the ALJ.  R. 1.

## II.    Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the

ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2015).

The Court must affirm the ALJ's decision if it is supported by substantial evidence and the

ALJ applied the correct law.  *Id.*  ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.

Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907

F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job

correctly and supported the decision reached with substantial evidence, this Court cannot

overturn the decision, even if it would have reached a contrary result on the same evidence."

*Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is

"more than a mere scintilla."  *Russell*, 440 F. App'x, at 164.  "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d, at 1456

(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks

omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less

than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court

"determine the weight of the evidence" or "substitute its judgment for that of the Secretary

if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Court shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c) (2012). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

## III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 15-24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 29, 2009. R. 15. At step two, under 20 C.F.R. § 404.1520(c), the ALJ found Plaintiff to have the following severe impairments: MS; GERD; depressive disorder; and anxiety

disorder. *Id.* The ALJ stated that these medical conditions "were severe because they more than minimally affected the claimant's ability to perform work activities." *Id.* [1] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. R. 16. Before proceeding to step four, the ALJ found that Plaintiff:

> [H]a[s] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she needed a cane to ambulate. She required a sit/stand option whereby she could sit for one hour and then stand for two to three minutes during the workday. She could frequently handle, finger, feel, push or pull with the hands bilaterally. She could occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl. She could never climb ladders, ropes, or scaffolds. She could never be exposed to unprotected heights or moving mechanical parts. She could occasionally be exposed to humidity, extreme cold, extreme heat, or vibrations. She was limited to understanding, remembering, and carrying out short, simple instructions consistent with the performance of unskilled work. She could have frequent interaction with supervisors, coworkers and the public.

R. 18. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work based on her RFC. R. 23. At step five, the vocational expert ("VE") stated that there were jobs within the national economy that Plaintiff could perform given her limitations, including addresser, call out operator, and charge account clerk. R. 24. The ALJ then concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in her favor, alleging that the ALJ failed in his evaluation of the presented evidence. ECF No. 10-1, p. 1. For the reasons set forth below, the Court reverses and remands the ALJ's decision.

---

[1] Plaintiff also alleged that she suffered from migraines, but the ALJ determined that Plaintiff lacked evidence of having and/or being diagnosed with migraines during the relevant period. R. 15-16.

### A. Step Three Impairments

At step three of the sequential evaluation process, the ALJ looks at whether Plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in Appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). Plaintiff argues that the ALJ failed in his assessment of her impairments, particularly the MS impairment under Listing 11.09, and anxiety and depressive disorders under Listings 12.04 and 12.06. ECF No. 10-1, 9, 11.

#### 1. The ALJ did not err in his evaluation of Plaintiff's MS impairment.

With regards to the MS impairment, the ALJ did not err in his finding that Plaintiff's condition does not meet the requirements of 20 C.F.R. § 404 Appendix 1, Listing 11.09. R. 16. The ALJ's decision was made on July 15, 2016 and correctly applied the 2012 version of 20 C.F.R. § 404 Appendix 1,[2] which stated under Listing 11.09 that for MS, there needs to be:

> (A) disorganization of motor function as described in 11.04B or
> a. 11.04B says there must be one of the following: (A) sensory or motor aphasia resulting in ineffective speech or communication; (B) significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements or gait and station.
> (B) visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
> (C) significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. § 404 Appendix 1 (2012); R. 25. Plaintiff was diagnosed with MS in 2009, but did not receive any treatment for MS through the relevant period, even though treatments were recommended by doctors. R. 16, 47-48, 462. The ALJ discussed how Jessica Kraker, one of

---

[2] The Court agrees with Commissioner's argument that Plaintiff applied the incorrect version of the statute, by relying on the 2016 version, effective as of September 29, 2016. ECF No. 11-1, 10-11.

Plaintiff's treating physicians, stated that Plaintiff did not have any issues with "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements or gait and station" or "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." R. 16, 266, 439. The ALJ further explained that Plaintiff had a single incident of optic neuritis in 2013, which caused some visual impairment but noted that this quickly remedied by steroids. R. 16, 413. The ALJ correctly assessed the evidence at hand and discerned that there was no other evidence in the record that showed that Plaintiff's condition qualified under Listing 11.09. R. 16. Therefore, for the reasons stated above, remand is not required.

2. *The ALJ erred in his evaluation of Plaintiff's anxiety and depressive disorders.*

With regard to Plaintiff's mental impairments under Listings 12.04 and 12.06, the ALJ erred in his assessment of Plaintiff's anxiety and depressive disorders. Under Listing 12.04, "Affective Disorders" are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. § 404 Appendix 1 (2012). Under Listing 12.06, "Anxiety Related Disorders," "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." *Id.* For both listings, the ALJ evaluated whether Plaintiff met the paragraph B criteria, requiring that Plaintiff meet two of the following categories: (1) marked restriction of activities of daily living; or (2) marked difficulties in

maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.*; R. 16.

Plaintiff argues that the ALJ failed to address pertinent evidence related to his findings at step three that Plaintiff had only mild restrictions in activities of daily living and moderate difficulties in concentration, persistence, and pace. ECF No. 10-1, 12-13. In regards to the mild restrictions in daily activities, while the Court is cognizant of Plaintiff's difficulties in performing household chores for long periods, the ALJ specifically noted that by Plaintiff's own testimony that she was still able to perform household chores, prepare meals and take care of her family. R.19, 45-47, 209. Therefore, there was no error in the assessment of Plaintiff's mild limitations in daily activities. However, with regards to the moderate limitations in concentration, persistence, and pace, Plaintiff argues that the ALJ failed to consider findings of "getting overwhelmed easily, having severe memory problems, fair judgment and insight, and severe anxiety and stress, with panic attacks and temper flares." ECF No. 10-1, 12. While the ALJ accounted for Plaintiff's memory problems and attention issues in the narrative by stating that Plaintiff "could not sustain attention for prolonged periods [and] had memory problems," the ALJ failed to account for anxiety and stress. R. 17. The ALJ also erred in stating that "no treating clinician observed any deficits in her attention, concentration, or memory," as both Dr. Kraker and Christine Forbes in 2013 and 2014 respectively noted that she has anxiety and stress and gets overwhelmed easily. R. 17, 413, 699.[3] While the Commissioner argues that the evidence cited to is outside of the relevant period, "[t]he Fourth Circuit has held that 'medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically

---

[3] The Court notes that it is not reweighing the record evidence, but rather the Court is noting discrepancies in the ALJ's narrative discussion.

barred from consideration and may be relevant to prove a previous disability.'" *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *6 (D. Md. July 17, 2012) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). If the ALJ's factual finding "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman*, 829 F.2d at 517 (citations omitted). Accordingly, the Court remands in order for the ALJ to consider Plaintiff's limitations due to anxiety and stress.

### B. RFC Assessment

Before step four of the sequential evaluation, the ALJ makes a determination of the residual functional capacity of the plaintiff. 20 C.F.R. § 404.1520(a)(4)(iv) (2012). The ALJ found that Plaintiff can perform sedentary work, but needs a cane to walk and an option to alternate sitting and standing throughout the day. R. 18. The ALJ further explained that Plaintiff was "limited to understanding, remembering, and carrying out short, simple instructions consistent with the performance of unskilled work." *Id.*

#### 1. The ALJ failed to consider the holding of Mascio in the RFC determination.

Plaintiff argues that the ALJ failed to do a function by function analysis of Plaintiff's impairments and how her impairments will affect her ability to work. ECF No. 10-1, 19. However, Plaintiff failed to identify specific facts in the record that the ALJ did not consider in his assessment. Indeed, "[i]t is not this Court's function to construct an argument for a party" after a "Plaintiff broadly argues that the ALJ did not consider all favorable evidence, but fails to specify what evidence the ALJ supposedly disregarded." *Hott v. Astrue*, No. JKB–09–2729, 2010 WL 4781303, at *3 (D. Md. Nov. 17, 2010). Instead, the Court finds that the ALJ did a function by function analysis and that Plaintiff only supplied broad arguments regarding the ALJ's failure. ECF No. 11-1, 15. However, Plaintiff argues that under the *Mascio* decision, the

ALJ's RFC assessment limiting Plaintiff to unskilled work did not account for her moderate limitations in concentration, persistence, and pace. ECF No. 10-1, 19-20; *see Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015) (holding that an RFC assessment must connect back to the step three finding of moderate limitations in concentration persistence and pace beyond just limiting the assessment to "unskilled work"); *see also Talmo v. Comm'r, Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) ("Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary.") The Court is persuaded by Plaintiff's argument and remands this case for the ALJ to include a limitation for concentration, persistence and pace, or explain why this limitation was not included in the RFC.

### 2. The ALJ correctly weighed the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ failed to give due weight to Dr. Kraker's opinion under the treating physician rule. R. 20.

> A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

*Griffin v. Commissioner*, No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017). The ALJ assigned Dr. Kraker's opinion little weight, but rationalized his conclusion with substantial evidence from the record, articulating specific places in the record where Dr. Kraker's opinions

were inconsistent with the other evidence.  R. 22.  Plaintiff failed to provide specific places in the record where Dr. Kraker's opinion was consistent with the evidence, instead only making broad general statements about the failure of the ALJ's analysis.  ECF No. 10-1, 20-21.  The ALJ assigned little weight to Dr. Kraker's opinion "on the basis of well-reasoned and articulated factors that are supported by both the medical and non-medical evidence of record."  ECF No. 11-1, 16.  Therefore, the ALJ did not err in assigning little weight to Dr. Kraker's opinion.

### C.  The ALJ did not err in his evaluation of Plaintiff's subjective complaints.

When considering Plaintiff's subjective statements, the ALJ follows a two-step process. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms.  Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities."  *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citations omitted).  "'A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'"  *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Plaintiff's subjective complaints should not be disregarded "solely because the available objective medical evidence does not substantiate [her] statements."  20 C.F.R. § 404.1529(c)(2) (2012).  In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4) (2012).  "Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain."  *Chavis v.*

*Berryhill*, No. ADC-17-1123, 2018 WL 1033267, at *10 (D. Md. Feb. 22, 2018) (citations omitted).

Plaintiff alleges that the ALJ erroneously evaluated her subjective complaints by failing to account for all the evidence that "overwhelmingly demonstrated severe or marked limitations" in Plaintiff's ability to perform tasks. ECF No. 10-1, 16. Commissioner instead argues that the ALJ adequately weighed the evidence provided and explains that even though Plaintiff alleged certain impairments, she did not seek treatment during the period; the objective evidence does not support her subjective claims; evaluations of Plaintiff were "unremarkable"; and Plaintiff was able to perform daily chores and activities during the period. ECF No. 11-1, 21. The Court is persuaded by Commissioner's arguments and finds no error in the ALJ's reasoning.

After considering the evidence presented, the ALJ determined that Plaintiff's symptoms could have reasonably been caused by her impairments, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 19. The ALJ proceeded to evaluate both the medical and nonmedical evidence, specifically citing to neurological exams that were "unremarkable" after Plaintiff complained of "irritability, anxiety and an electric sensation." R. 19. The ALJ noted that Plaintiff was given medication to treat the shock sensation and optic neuritis, which resolved within a few weeks with treatment. *Id.* The ALJ also noted Plaintiff's failure to seek treatment for her conditions until after the date last insured, including for her depression and anxiety, even though she continued to state that she could not work due to those conditions. *Id.* During this period, Plaintiff was able to perform a variety of daily tasks, including caring for her family and cleaning her house. *Id.* The ALJ conceded that some of Plaintiff's conditions could have limited her, as reflected in the RFC, but the ALJ surmised that

Plaintiff's "symptoms were not as severe or as limiting as her claims." *Id.* Because the ALJ considered the available evidence and provided adequate explanation of his decision, the Court finds no error in his assessment of Plaintiff's subjective complaints.

### D. Vocational Expert's Testimony

Plaintiff's final argument concerns step five of the sequential evaluation process. ECF No. 10-1, 22. Plaintiff argues that the hypotheticals posed to the VE were improper and that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). *Id.* at 24-25.

### 1. The hypothetical posed to the Vocational Expert was proper.

Plaintiff argues that (1) the ALJ erred by posing hypotheticals regarding light work, when the RFC determination made by the ALJ asserted sedentary work; and (2) the ALJ erred by "failing to consider and accept" the VE's testimony stating that there would not be any jobs available to a person who would be off-task for more than 15% of the workday or absent two or more days per month. *Id.* at 24. Commissioner argues that the ALJ is afforded the ability to pose numerous questions to the VE during the administrative hearing, but is not required to adopt all of the findings. ECF No. 11-1, 22. Indeed, "an ALJ is afforded 'great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.'" *Chavis*, 2018 WL 1033267, at *14 (quoting *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (per curiam)). Accordingly, "a hypothetical question is unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (citations omitted)(emphasis omitted)).

Accordingly, the ALJ was within his authority to pose numerous hypotheticals to the VE, including a hypothetical that included "light work." The ALJ is only required to adopt findings that are "recognized as relevant from the record and the testimony." ECF No. 11-1, 22-23. Because the ALJ is not required to adopt all the findings of the VE, the ALJ appropriately rejected the limitation of Plaintiff being off task or absent, as there was no evidence in the record to support those findings.[4] The ALJ correctly adopted the findings of the VE that were consistent with the RFC determination, which was supported by substantial evidence. *See supra* Part B. Therefore, the ALJ did not err in the hypotheticals posed to the VE.

### 2. The Vocational Expert's testimony, while inconsistent with the DOT, was not mistaken.

Plaintiff finally argues that, even if the hypotheticals posed to the VE were not erroneous, the VE's testimony was inconsistent with the DOT and therefore should be remanded. ECF No. 10-1, 25. At step five, an ALJ considers both the DOT and the VE's testimony to determine whether jobs exist for Plaintiff based on her RFC. *Chavis*, 2018 WL 1033267, at *15. "First, the ALJ must '[a]sk the VE ... if the evidence he or she has provided conflicts with information provided in the DOT;' and second, '[i]f the VE's ... evidence appears to conflict with the DOT[,]' the ALJ must 'obtain a reasonable explanation for the apparent conflict.'" *Id.* (citations omitted). The VE himself noted the inconsistency between his testimony and the DOT, stating that the DOT does not "specifically address" "cane limitation or sit/stand limitation." R. 73. The VE explained that he used his "knowledge, understand[ing] and 25 years of experience in the field of vocational rehabilitation" to justify his findings that Plaintiff could perform certain jobs as defined by the DOT, even though the DOT did not address the cane and sit/stand limitations. *Id.*

---

[4] Plaintiff failed to provide any evidence from the record that supports her argument. ECF No. 10-1, 24. As noted in Part B, Section 1, the Court is under no obligation to search the record to support Plaintiff's broad arguments.

The ALJ himself addressed this issue in his decision and explained that "[t]he vocational expert's testimony does not conflict with agency policy, and in light of his experience, the undersigned finds his explanation, and his testimony, persuasive." R. 24. Plaintiff also argued that "it stands to reason that each break to stand from the seated position would require [Plaintiff] to be off task," but the Court agrees with Commissioner that "[t]here was no suggestion whatsoever that the individual would need to be off task while standing." ECF No. 10-1, 25; ECF No. 11-1, 23. Therefore, the Court finds no error in the VE's testimony.

## IV.    Conclusion

Based on the foregoing, the Court **REVERSES** and **REMANDS** with specific instructions for the ALJ to supply a more extensive evaluation of Plaintiff's mental impairments at step three of the sequential evaluation and further consideration of the holding in *Mascio v. Colvin* in the RFC assessment.

July 9, 2018                                                    _____/s/_____

                                                                        Charles B. Day
                                                                        United States Magistrate Judge

CBD/gbc/ejm